**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger**

Civil Action No. 13-cv-02201-MSK-CBS

HACH COMPANY,

      Plaintiff,

v.

IN-SITU, INC.,

      Defendant.

_____

### OPINION AND ORDER DENYING MOTION FOR SUMMARY JUDGMENT
_____

**THIS MATTER** comes before the Court pursuant to the Defendant's ("In Situ") Motion for Summary Judgment (**# 35**), the Plaintiff's ("Hach") response (**# 50**), and In Situ's reply (**#54**); and Hach's Motion to Strike (**# 55**) In Situ's summary judgment reply brief, In Situ's response (**# 57**), and Hach's reply (**# 58**).[1]

### FACTS

The pertinent facts are fairly simple. As of 1999, a company called PhotoSense, LLC ("PhotoSense")[2] held a patent on certain technologies.  In 1999, Hach and PhotoSense entered

---

[1]     Also pending is In Situ's Motion for Default Judgment (**# 38**) against Hach with regard to In Situ's counterclaims.  The Clerk of the Court refused to enter Hach's default (**# 38**), noting that Hach had subsequently filed an Answer to those counterclaims.  In Situ has not sought review of the Clerk's refusal to enter default, and in any event, the Court finds that, notwithstanding any dispute between the parties as to the timeliness of Hach's Answer, Hach has not "failed to plead or otherwise defend" under Fed. R. Civ. P. 55(a).  Accordingly, the Motion for Default Judgment is denied.

[2]     As set forth below, it appears that Defendant In Situ acquired PhotoSense's rights in the patent at issue here in or about 2007.  Nevertheless, there is evidence that the parties continued to

into a licensing agreement under which PhotoSense granted Hach an exclusive license to use the

patented technology in exchange for Hach making certain annual royalty payments.  Of

particular significance is Section III.D of the license agreement, which reads as follows:

> Should Hach elect at any time during the term of this Agreement
> not to pay minimum royalties when due under Paragraph C above,
> the Grant of [exclusive] License set forth in Section II above shall
> automatically convert to a non-exclusive license and grant, and all
> exclusive rights conferred pursuant to this Agreement shall
> likewise be converted to non-exclusive rights.

Another contractual provision, Section III.E, granted PhotoSense the option, after year four of

the agreement, to convert Hach's exclusive to a non-exclusive license if Hach's annual royalties

did not exceed a given threshold.

Under the terms of the agreement, Hach's annual royalty payment for "Year Two" was

due on August 13, 2001.  Hach did not make that payment as scheduled, as a result of what it

now characterizes as "an internal bookkeeping error."  Instead it made the scheduled payment on

or about September 9, 2001, 27 days later than required.  The record does not reflect that

PhotoSense rejected the untimely payment, promptly complained to Hach about the delay, or

otherwise expressed any immediate intention to take any action on the delayed payment.

Rather, the parties continued their normal course of business.  The record reflects that in

2003 and 2004, Hach and PhotoSense continued negotiations over the existing license

agreement, in which PhotoSense sought to limit the scope of Hach's exclusive license.  Those

negotiations failed to yield an agreed-upon modification, and PhotoSense threatened to invoke its

rights under Section III.E to convert Hach's license to non-exclusive.  Hach disputed whether the

---

treat PhotoSense as the holder of the patent rights as late as 2013, when PhotoSense brought a
suit in its own name against Hach to resolve a question of the parties' relative rights in the
technology.   For purposes of clarity, the Court will generally refer to PhotoSense as the owner
of rights in the patent, addressing In Situ's role only when specifically necessary.

conditions precedent to PhotoSense's right under Section III.E had occurred.  On June 24, 2004,

PhotoSense wrote to Hach acknowledging the parties' dispute over the application of Section

III.E, but went on to stated "the issue of Paragraph III.E is moot because Paragraph III.D was

triggered by an overdue minimum royalty payment made on 9 Sept. 2001."  This was apparently

the first time that PhotoSense had advised Hach of its position that the late royalty payment in

2001 had activated the provisions of Section III.D.

The record is somewhat less clear with regard to the events that ensued.   Hach has

submitted the affidavit of its President, Glenn Cruger, who suggests (somewhat indirectly[3]) that,

notwithstanding PhotoSense's June 24, 2004 letter, the parties continued discussions in 2005 and

2007 about the licensing agreement, and that such discussions implicitly recognized Hach's

continuing exclusivity.  Specifically, Mr. Cruger points to a 2005 internal Hach e-mail that

mentions a meeting between representatives of Hach and PhotoSense in January 2005, ostensibly

for the apparent purpose of "clarify[ing] this contractual situation."  The e-mail's author states

that "PhotoSense and we agreed that we will respect our contract and . . . Photosense reassured

that they are not working with any of our competitors.  They will respect the contract."  Mr.

Cruger also points to a 2007 document entitled "Hach Proposal to PhotoSense," which appears to

be Hach's position regarding renegotiation of the license agreement.  Among other things, Hach

offered to release its exclusive rights to the technology (retaining only non-exclusive rights) in

exchange for a reduced royalty rate.  (The record does not reveal PhotoSense's response to this

proposal or any further communications between the parties on this issue.)

---

[3]      Although Mr. Cruger was apparently directly involved in such discussions, his affidavit
only makes reference to written summaries of meetings with PhotoSense in 2005 and 2007 that
he has located, not to any events from that time period that he professes to specifically recall.

In 2013, PhotoSense brought suit against Hach in the Colorado District Court for Boulder County, seeking a declaratory judgment that the late 2001 royalty payment automatically converted Hach's rights in the technology from exclusive to non-exclusive under Section III.D of the license agreement.  Although the parties have submitted PhotoSense's Complaint and Hach's Answer in that action as exhibits here, the record does not disclose the outcome of that lawsuit.[4]

At some point in time, In Situ succeeded PhotoSense's rights in the patent, and began using the patented technology in products that competed with Hach's products.  Hach commenced this action on August 15, 2013, asserting a single claim for patent infringement, based on its exclusive right to use the technology via the license agreement.  In Situ filed the instant Motion for Summary Judgment **(# 35)**, arguing that the late 2001 royalty payment operated to automatically convert Hach's rights from exclusive to non-exclusive, thus permitting In Situ's use of the technology.  After briefing was concluded, Hach moved **(# 55)** to strike In Situ's reply brief on the grounds that it raised numerous factual and legal arguments for the first time in reply.[5]

## ANALYSIS

### A.  Standard of review

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary.  *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).

---

[4]    The Court can take judicial notice of the docket in the Boulder County case, however.  It notes that the parties tendered a Stipulation for Dismissal of All Claims and Counterclaims on January 28, 2014, and that on January 29, 2014, the Court dismissed the action with prejudice. Neither party has addressed the effect of PhotoSense's dismissal with prejudice of its claim for a declaratory judgment regarding the operation of Section III.D of the contract on the arguments put forward in this action.

[5]    The Court summarily denies Hach's Motion to Strike, finding that the facts and arguments raised by In Situ's reply are responsive to contentions raised by Hach in its response.

Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Substantive law governs what facts are material and what issues must be determined.  It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989).  A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party.  *See Anderson*, 477 U.S. at 248.  When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial.  *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence.  *See* Fed. R. Civ. P. 56(c)(1)(A).  Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute.  *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999).  If there is a genuine dispute as to a material fact, a trial is required.  If there is no genuine dispute as to any material fact, no trial is required.  The court then applies the law to the undisputed facts and  enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove.

If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required.  If the respondent fails to produce sufficient competent evidence to establish its claim or defense, then the movant is entitled to judgment as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

### B.  Merits

An essential element of a patent infringement claim is that the plaintiff is either the owner or an exclusive licensee of the patent; non-exclusive licensees lack standing to bring such claims. *Spine Solutions, Inc. v. Medtronic Sfamor Danek USA, Inc.*, 620 F.3d 1305, 1317 (Fed.Cir. 2010).  In Situ contends that Hach lost the exclusive use of technology upon the late tender of the 2001 royalty payment, by operation of Section III.D of the agreement.

Hach raises several arguments in response.  First, it argues that the Court should postpone ruling on this motion under Fed. R. Civ. P. 56(d) because Hach requires additional discovery to be able to fully respond. The Court rejects that argument for several reasons.  Relief under Rule 56(d) is appropriate only where the party requesting additional time has not been "dilatory in conducting discovery."  *Garcia v. U.S. Air Force*, 533 F.3d 1170, 1180 (10th Cir. 2008).  The record reflects that the parties quickly prevailed upon the Magistrate Judge to stay discovery **(#33)** until In Situ's Motion for Summary Judgment could be addressed; parties cannot claim to be disadvantaged by a stay of discovery that they requested or to which they agreed.  Moreover, the record reflects that much of the information that Hach must present to oppose the motion is information within its own knowledge or control.  In any event, the issue is irrelevant, as the Court is denying In Situ's motion.

Turning to the substance of the matter, Hach first argues that Section III.D of the license agreement was not implicated by the 2001 late royalty payment because the contractual language

only permits the revocation of Hach's exclusive license upon Hach's "elect[ion]" to not timely

pay royalties.  Hach argues that the term "elect" necessarily includes an element of willfulness,

and that its inadvertent failure to make timely payment of the royalties was simply a "mistake,"

not an "elect[ion]" to not pay the royalties.  The Court is largely unpersuaded by this semantic

argument, but need not conclusively resolve the issue for the reasons set forth herein.

 The Court finds merit in what is essentially an argument by Hach that PhotoSense's post-

2001 conduct could amount to a waiver of any rights it had under Section III.D to deem the

license to be non-exclusive.  Under Colorado law, a party possessing a legal right may

nevertheless waive that right by voluntarily relinquishing it.  *Western Cities Broadcasting, Inc. v.*

*Schueller*, 830 P.2d 1074, 1079 (Colo.App. 1991), *citing Ewing v. Colorado Farm Mut. Cas.*

*Co.*, 296 P.2d 1040 (Colo. 1956).  The Court may infer a party's intention to waive a right where

the party "engages in conduct manifesting his intention to relinquish that right," but such conduct

"must be free from any ambiguity so as to manifest clearly such an intention."  *Id.*  A party

claiming a contractual right will be considered to have waived it "if the party has acted

inconsistently with it and prejudice would accrue to the other parties."  *Vessels Oil & Gas Co. v.*

*Coastal Refining & Mktg., Inc.*, 764 P.2d 391, 392 (Colo.App. 1988).

 Construing the record most favorably to Hach, PhotoSense was aware of its right to

revoke Hach's exclusivity under Section III.D at least as of June 24, 2004, when PhotoSense

expressly stated its belief that the 2001 late payment activated its rights under that section.

Nevertheless, there is no indication that PhotoSense's actions thereafter were consistent with the

belief that Hach's license was no longer exclusive after that date.  Indeed, Mr. Cruger's affidavit

indicates that in a January 2005 meeting, PhotoSense advised Hach that "they are not working

with any of our competitors.  They will respect the contract."  Given the fact that Hach's

exclusivity had been a longstanding point of negotiation between the parties,[6] a reasonable

interpretation of this evidence is that PhotoSense, although arguably possessing the ability to

license the technology to Hach's competitors as a result of the 2001 late payment, was

nevertheless agreeing not to do so.  (The evidence of Hach's 2007 contract proposal is less

probative, as it merely reflects Hach's belief that it retained exclusive rights to the technology;

the record does not reflect PhotoSense's response to that proposal.)

In Situ argues that there is evidence suggesting that PhotoSense's post-2004 actions

reveal a belief that it had terminated Hach's exclusivity.  In support of this argument, In Situ

relies exclusively on a 2007 Membership Purchase Agreement, by which PhotoSense and its

principals sold their ownership in a company named TauTheta Instruments, LLC to In Situ.

(According to the '028 patent attached to the Complaint, TauTheta Instruments was the assignee

of the patent at issue in this case.)  The copy of the Membership Purchase Agreement in the

record is poorly copied and difficult to read, but it appears to provide that PhotoSense and its

principals represented to In Situ that PhotoSense (or TauTheta Instuments) "possesses adequate

licenses or other valid rights to use . . . all of the Intellectual Property that is necessary for the

conduct of [TauTheta Instruments'] business."  In Situ argues that "PhotoSense. . . would not

have made [those] representations to In Situ in the absence of its reliance on the fact that Hach

had non-exclusive rights in the technology at issue."

Notably, In Situ does not tender an affidavit from any of PhotoSense's principals

regarding their understanding of that provision of the Membership Purchase Agreement or

---

[6]      PhotoSense's apparent waiver of the right to invoke the operation of Section III.D of the
agreement is also conspicuous based on the parties' ongoing negotiations over continued
exclusivity between 2003 and 2004.  Such negotiations would not have occurred if PhotoSense
was of the opinion that Hach had lost its exclusivity as of 2001.  It may be that PhotoSense may
not have understood the  potential contractual significance of the late 2001 payment until June
2004, but it is not necessary for the Court to resolve this issue at this time.

otherwise seek to explain how the parties interpreted the quoted portion of that agreement.  On

their face, the terms of the Membership Purchase Agreement do not clearly disclose

PhotoSense's beliefs concerning whether Hach's license in the technology remained exclusive.

It may be that PhotoSense and its principles did not consider the patent at issue here to be

"necessary for the conduct of [TauTheta's] business," and thus, not covered by the language

quoted above.  It may be that they recognized the patent as being necessary to the business, but

they believed that the exclusive licensing of that patent to Hach was consistent with the

representations made in that paragraph (*e.g.* that PhotoSense's retained ownership of the patent

and continued receipt of royalties pursuant to the licensing agreement constituted PhotoSense's

"valid rights to use" the patent to generate revenue).  Or, it may be that PhotoSense and its

principals simply deceived In Situ about the extent of its rights in the patent.  Such deceit may

give rise to a cause of action by In Situ against PhotoSense and its principals, but it is not

particularly probative, in and of itself, of PhotoSense's beliefs (much less PhotoSense's actions)

regarding the nature of Hach's license.

Accordingly, the Court finds that Hach has come forward with evidence that raises a

genuine, triable issue of fact with regard to the question of whether PhotoSense waived any right

it may have had under Section III.D to convert Hach's license to non-exclusive based on the late

2001 royalty payment.  That question will have to be resolved via trial.  Accordingly, In Situ's

Motion for Summary Judgment is denied.

### CONCLUSION

For the foregoing reasons, In Situ's Motion for Default Judgment (**# 38**), In Situ's

Motion for Summary Judgment (**# 35**), and Hach's Motion to Strike (**# 55**) are all **DENIED**.  It

appearing that the Magistrate Judge stayed discovery in this action pending resolution of the

summary judgment motion, the Court directs the parties to immediately contact the Magistrate

Judge and commence an expedited period of discovery, with the intention of having this case

prepared to proceed to trial within 120 days.

Dated this 1st day of September, 2014.

**BY THE COURT:**

Marcia S. Krieger
Chief United States District Judge