IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-02201-CBS

HACH COMPANY,

    Plaintiff,

v.

IN-SITU, INC.,

    Defendant.

---

## SPECIAL VERDICT FORM

---

We, the jury, present our Answers to Questions submitted by the Court, to which we have all agreed:

1. Did Hach Company acquire through the July 14, 1999 License Agreement with PhotoSense, LLC an exclusive license to use all "Licensed Patents" acquired by or on behalf of PhotoSense or any of its "Affiliates?" (Yes or No)

    ANSWER: __yes__

*If your answer to Question No. 1 is "yes," then proceed to Question No. 2. If your answer to Question No. 1 is "no," then skip the remainder of the questions and sign and date this Special Verdict Form.*

2. Did Hach Company timely pay the required minimum annual royalty for 2001 pursuant to Section III.D of the License Agreement? (Yes or No)

    ANSWER: __no__

*If your answer to Question No. 2 is "yes", continue to Question No. 5. If your answer to Question No. 2 is "no," then proceed to Question No. 3.*

1

3. Did PhotoSense voluntarily and intentionally waive its right under Section III.D to treat Hach's exclusive license as a non-exclusive license based upon Hach's untimely payment of the minimum annual royalty in 2001? (Yes or No)

    ANSWER: __no__

*If your answer to Question No. 3 is "yes", continue to Question No. 5. If your answer to Question No. 3 is "no," then proceed to Question No. 4.*

4. Did PhotoSense, with full knowledge of the pertinent facts relating to the untimely payment of the minimum annual royalty payment in 2001, unreasonably delay in asserting its right under Section III.D of the License Agreement and did Hach reasonably rely on that delay to its detriment? (Yes or No)

    ANSWER: __yes__

*If your answer to Question No. 4 is "yes", continue to Question No. 5. If your answer to Question No. 4 is "no," then skip the remainder of the questions and sign and date this Special Verdict Form.*

5. Did Hach Company timely pay the required minimum annual royalty for 2003 pursuant to Section III.D of the License Agreement? (Yes or No)

    ANSWER: __no__

*If your answer to Question No. 5 is "yes", continue to Question No. 8. If your answer to Question No. 5 is "no," then proceed to Question No. 6.*

6. Did PhotoSense voluntarily and intentionally waive its right under Section III.D to treat Hach's exclusive license as a non-exclusive license based upon Hach's untimely payment of the minimum annual royalty in 2003? (Yes or No)

    ANSWER: __no__

*If your answer to Question No. 6 is "yes", continue to Question No. 9. If your answer to Question No. 6 is "no," then proceed to Question No. 7.*

2

7. Did PhotoSense, with full knowledge of the pertinent facts relating to the untimely payment of the minimum annual royalty payment in 2003, unreasonably delay in asserting its right under Section III.D of the License Agreement and did Hach reasonably rely on that delay to its detriment? (Yes or No)

   ANSWER: __no__

*If your answer to Question No. 7 is "yes", continue to Question No. 8. If your answer to Question No. 7 is "no," then skip the remainder of the questions and sign and date this Special Verdict Form.*

8. Did Hach Company under Section III.E of the License Agreement pay actual annual royalties that were less than the stated minimum royalty payment in 2003? (Yes or No)

   ANSWER: _____

9. Did PhotoSense, pursuant to Section III.E of the License Agreement, automatically convert from an exclusive to a non-exclusive license based upon the fact that Hach's actual annual royalties paid in 2003 were less than the stated minimum royalty payment in 2003? (Yes or No)

   ANSWER: _____

*If your answer to Question No. 9 is "yes", continue to Question No. 10. If your answer to Question No. 9 is "no," then proceed to Question No. 12.*

10. Did PhotoSense voluntarily and intentionally waive its right under Section III.E to convert Hach's exclusive license to a non-exclusive license based on Hach's payment of actual annual royalties that were less than the stated minimum royalty payment in 2003? (Yes or No)

    ANSWER: _____

*If your answer to Question No. 10 is "yes", continue to Question No. 12. If your answer to Question No. 10 is "no," then proceed to Question No. 11.*

11. Did PhotoSense, with full knowledge of the pertinent facts relating to the payment of actual annual royalties that were less than the stated minimum royalty payment in 2003, unreasonably delay in asserting an available right under the License Agreement and did Hach reasonably rely on that delay to its detriment? (Yes or No)

        ANSWER: _____

*If your answer to Question No. 11 is "yes", continue to Question No. 12. If your answer to Question No. 11 is "no," then skip the remainder of the questions and sign and date this Special Verdict Form.*

12. Is the '028 patented technology acquired by TauTheta and transferred to In-Situ a "Licensed Patent" subject to the terms and conditions of the 1999 License Agreement? (Yes or No)

        ANSWER: _____

*If your answer to Question No. 12 is "yes," then proceed to Question No. 13. If your answer to Question No. 12 is "no," then skip the remainder of the questions and sign and date this Special Verdict Form.*

13. Is In-Situ infringing on Hach's exclusive rights under the 1999 License Agreement? (Yes or No).

        ANSWER: _____

*If your answer to Question No. 13 is "yes," then proceed to Question No. 14. If your answer to Question No. 13 is "no," then skip the remainder of the questions and sign and date this Special Verdict Form.*

14. Answer one or the other of the following questions:

    14(a). What reasonable royalty is Hach entitled to for In-Situ's past infringement of the '028 patented technology? (Your answer below should be in dollars and cents)

        ANSWER: _____

    14(b). What lost profits, if any, is Hach entitled to for In-Situ's past infringement of the '028 patented technology? (Your answer below should be in dollars and cents)

        ANSWER: _____

Dated: _____July 1_____, 2016